JONATHAN M. ROTTER (#234137)
  jrotter@glancylaw.com
LESLEY F. PORTNOY (#304851)
  lportnoy@glancylaw.com
STAN KARAS (#222402)
  skaras@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:    (310) 201-9160
Email:         info@glancylaw.com

MICHAEL N. COHEN (#225348)
  mcohen@cohenip.com
9025 Wilshire Blvd., Suite 301
Beverly Hills, California 90211
Telephone: (310) 288-4500
Facsimile:  (310) 246-9980

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Nita Batra,<br><br>　　　　Plaintiff, on behalf of herself and all others similarly situated,<br><br>　　v.<br><br>PopSugar, Inc. a Delaware corporation,<br><br>　　　　Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF THE DMCA;**<br>**(2) COPYRIGHT INFRINGEMENT;**<br>**(3) INFRINGEMENT OF THE RIGHT OF PUBLICITY;**<br>**(4) INTENTIONAL INTERFERENCE WITH CONTRACT;**<br>**(5) VIOLATION OF THE LANHAM ACT;**<br>**(6) VIOLATION OF THE UNFAIR COMPETITION LAW**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

407401.1

# INTRODUCTION

1. As customers continue to abandon brick-and-mortar retail in favor of online shopping, many companies, especially those in the fashion and lifestyle industry, increasingly rely on social media to promote and sell their products. This trend allows persons with large numbers of followers on social media (the "Influencers") to monetize the content that they post online. One way for an Influencer to do so is by entering into a contract with a shopping platform. Under such an agreement, followers of Influencers are able to purchase fashions and accessories featured on Influencers' various social media accounts through a link featured on such posts, with a portion of the revenue going to the Influencers. Here, Plaintiff Nita Batra, along with many other Influencers, works with shopping platform LIKEtoKNOW.it to monetize her posts.

2. Defendant PopSugar, Inc. decided to capitalize on the Influencers' social media following by copying and posting thousands of Influencers' Instagram images on its own website without authorization (the "Infringed Images"), on unauthorized PopSugar subpages for each Influencer. PopSugar removed the links to LIKEtoKNOW.it from the Infringed Images, replacing them with links to ShopStyle, a competing shopping platform that PopSugar previously owned, and which it used at the time of the acts alleged herein. When PopSugar's misappropriation came to light, ShopStyle responded by announcing the termination of its business relationship with PopSugar.

3. PopSugar's unlawful conduct harmed Plaintiff and the class members in a variety of ways. First, by removing information regarding the Influencers' authorship or ownership of the Infringed Images and other information from the posts, PopSugar violated Plaintiff's and class members' rights under the Digital Millennium Copyright Act ("DMCA"). Second, PopSugar is liable under the Copyright Act for reproducing the Infringed Images on its website without authorization. Third, PopSugar violated Plaintiff's and class members' statutory right of publicity under California law by using their names and likenesses in connection with its own marketing efforts. Fourth, PopSugar unlawfully interfered with the standardized contract between the class members and LIKEtoKNOW.it, by diverting commissions from the sales of products featured in the Infringed Images to itself. Fifth, PopSugar's conduct violates Section 43(a) of the Lanham Act by creating a

false impression that Plaintiff and the Class endorse or are otherwise affiliated with that company. Finally, PopSugar's unlawful and unfair actions violate California's Unfair Competition Law.

4. Through this class action, Plaintiff seeks redress for PopSugar's massive infringement, and seeks to recover actual and/or statutory damages.

## JURISDICTION AND VENUE

5. The Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a)-(b), and supplemental jurisdiction under 28 U.S.C. § 1367(a).

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1)-(2) and 1400(a).

7. This Court has personal jurisdiction over Defendant because, among other things, Defendant does business in the State of California and in this judicial district, the acts of infringement complained of herein occurred in the State of California and in this judicial district, and Defendant has caused injury to Plaintiff and the Class and their intellectual property within the State of California and in this judicial district.

## INTRADISTRICT ASSIGNMENT

8. Pursuant to L.R. 3-2(c), this action is properly assigned to the San Francisco or Oakland division because a substantial part of the events or omissions which give rise to the claim occurred in San Francisco.

## PARTIES

9. Plaintiff Nita Batra is an individual residing in Los Angeles, California. She blogs at https://nextwithnita.com/, has an Instagram feed at https://www.instagram.com/nextwithnita/ and on the Instagram app, and a LIKEtoKNOW.it shoppable feed at https://www.liketoknow.it/nextwithnita and on the LIKEtoKNOW.it app.

10. Defendant PopSugar, Inc. is a Delaware corporation with a principal place of business in San Francisco, California.

## FACTS

11. With increasing use of social media platforms, such as Instagram, Facebook, and YouTube, marketing and advertising on such platforms has become increasingly important. Numerous brands, including fashion and lifestyle brands, seek to promote their products through

Influencers. Because the Influencers establish a personalized relationship with their social media followers, their endorsement or use of certain products greatly increases the public awareness of these products and leads to increased sales.

12. Plaintiff is an Influencer. Under the handle @nextwithnita, Plaintiff maintains an active Instagram account. This account has more than 214,000 followers. Plaintiff has posted more than 1,400 images to her account. The header for the account as well as the sidebars for various images posted to the account features links to Plaintiff's other social media websites, as well as other personal information. Social media users often leave comments next to the images that Plaintiff posts on Instagram, which serves to further promote her role as an Influencer and expand her social media reach.

13. The images that Plaintiff posts to her Instagram account focus largely on fashion and lifestyle. Most images feature Plaintiff wearing fashionable clothing, which enhances her value and reach as an Influencer. Importantly, the images of Plaintiff on Instagram generally feature links to affiliate program LIKEtoKNOW.it, which has over 1.3 million registered users. LIKEtoKNOW.it allows social media users to "shop [their] screenshots of [their] favorite influencer looks" and features hundreds of thousands of "shoppable influencer images." If a social media user likes, for example, an outfit that Plaintiff is wearing in a particular image, then he or she may either add that image to the user's LIKEtoKNOW.it app, which then links to retailers' web pages for the featured products, or go to a web address to one of Plaintiff's LIKEtoKNOW.it webpages, which likewise provides links to the retailer's page for the featured product. When the social media user purchases that product through a link provided by LIKEtoKNOW.it, a percentage of the sale price is allocated to Plaintiff. In other words, working with LIKEtoKNOW.it allows Influencers to monetize the content that they post to their social media sites. This arrangement is governed by a standardized contract between the Influencers and LIKEtoKNOW.it titled "Influencer End User License Agreement and Terms of Service Agreement."

14. Defendant PopSugar, Inc. is a global media and technology company. PopSugar claims that it reaches 50% of female millennials in the United States and that it has more than 27 million fans and followers. After being founded in 2006, PopSugar has greatly expanded and

currently has over 450 employees. The company has three offices in the United States, as well as an office in London. In 2007, the company purchased ShopStyle, an online shopping platform that focuses on the latest fashions. Upon information and belief, there is a substantial overlap between the target audiences for ShopStyle and LIKEtoKNOW.it.

15. Among its other ventures, PopSugar operates popsugar.com, a website focused on pop culture, fashion and lifestyle issues. *The New York Times* has described the website as "eye candy" for the "celebrity- and fashion-obsessed." The website also serves as a shopping platform, allowing users to purchase products, including fashionable clothing.

16. In or about the summer of 2017, PopSugar commenced a campaign of wholesale infringement of Plaintiff's and Class members' rights under federal and state law. Specifically, PopSugar re-posted the Infringed Images along with the Influencers' top-level Instagram headers to its own website. Upon information and belief, PopSugar reposted all of the images on Plaintiff's and Class members' Instagram accounts that were associated with LIKEtoKNOW.it affiliate links.

17. Compounding its misconduct, PopSugar removed the LIKEtoKNOW.it affiliate links thereby removing the connection to LIKEtoKNOW.it, replacing them instead with links to ShopStyle. This had the effect of interfering with the revenue stream from LIKEtoKNOW.it to Plaintiff and Class members. Upon information and belief, by misappropriating the Infringed Images, PopSugar also impeded the growth of Plaintiff's and Class members' social media presence on authorized platforms.

18. Upon information and belief, PopSugar's misconduct was motivated by two principal factors. First, PopSugar wished to attract traffic to itself and to ShopStyle and generate affiliate revenue for itself, thus depriving Plaintiff's and the Class of their LIKEtoKNOW.it commissions.[1] Second, PopSugar wished to conduct marketing research in an attempt to improve its offerings.

19. PopSugar's use of the Infringed Images continued at least until April 2018. Although PopSugar does not appear to feature the Infringed Images on its website currently, upon information and belief, PopSugar may choose to re-post them in the future, thus further damaging Plaintiff and the Class.

---

[1] Upon information and belief, PopSugar sold ShopStyle, but it continued to use the service.

20. LIKEtoKNOW.it publicly confirmed that PopSugar's misappropriation was "done without rewardStyle/LIKEtoKNOW.it's knowledge or consent."

21. Similarly, even ShopStyle, the affiliate network with whose links PopSugar replaced the legitimate LikeToKNOW.it links, called PopSugar's actions "unacceptable" and "a misuse of influencers' content." While ShopStyle had entered into an exclusive contract with PopSugar after PopSugar sold ShopStyle, ShopStyle announced that it was terminating those agreements due to PopSugar's violation of "the trust and legal rights of our influencer community" and the "terms of its agreements with Ebates [the purchaser of ShopStyle] and ShopStyle" through PopSugar's mass misappropriation.

22. When caught, PopSugar's co-founder and CEO, Brian Sugar, attempted to minimize PopSugar's culpability, tweeting on April 17, 2018, that the misappropriated pages were "intended for internal use only, [but] were mistakenly left open, albeit hidden from search engine indexing and social media." But that was false. The pages were picked up by search engines, and were available through PopSugar's public website, under the Shop → Looks directory.

23. Sugar's entire twitter statement was:

> During a hackathon we built a tool to analyze fashion and beauty bloggers and products they featured. We used publicly available APIs to gain an understanding of trends across brands, retailers, and categories. We changed the links so we could track clicks to retailers and understand trends internally.
> We exposed our findings on popsugar.com (but hidden from search indexing and social media) for easy browsing of related looks and products for our editors and producers last summer of 2017. In hindsight, this should have been password protected so only PopSugar employees could use the feature.
> We quickly realized that this experiment wasn't working and decided not to pursue it. We mistakenly left these urls open not to make money or anything nefarious, but from a lack of monitoring and misallocation of resources.
> On Sunday night, it was brought to my attention that this feature was still live and we immediately removed it from our site.
> Since the feature went live, we have received $2,695 in commissions from this area on popsugar.com and we will pay in full the appropriate influencers who have earned it.
> I sincerely apologize for all the pain this may have caused and I feel terrible about how this made people feel.

24. Even if this constitutes an accurate description of PopSugar's intentions, this "experiment" should never have been conducted, and would not have been appropriate even had it been accessible only to PopSugar employees.

CLASS ACTION COMPLAINT
5
407401.1

25. To date, PopSugar has not compensated Plaintiff and, upon information and belief, Class members for its misconduct. Plaintiff brings this action on behalf of herself and the Class to recover damages and other remedies for PopSugar's pervasive and intentional violations of their intellectual property and other rights.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action under Federal Rule of Civil Procedure 23.

27. The proposed class consists of all persons whose Infringed Images Defendant reposted to popsugar.com, within the relevant statute of limitations period(s), excluding (1) Defendant's directors, officers, employees, and affiliates, and (2) the Judicial Officer and staff assigned to this case (the "Class").

28. With respect to the Second Cause of Action for copyright infringement, the proposed Class consists of all persons (a) whose Infringed Images Defendant posted without authorization to popsugar.com, (b) where those images were registered with the Copyright Office at the time or within three months of their publication, within the relevant statute of limitations period(s), excluding (1) Defendant's directors, officers, employees, and affiliates, and (2) the Judicial Officer and staff assigned to this case (the "Subclass").

29. The precise size of the Class is unknown, but is estimated to include at least hundreds of Influencers, and is so numerous that joinder of all members is impractical. Identities of Class Members may be readily determined from Defendant's records and/or other sources. Notice to the Class can be provided through mail, email, the Internet and/or other means of communication.

30. Common questions include whether Defendant is subject to liability under the Copyright Act, the Lanham Act, and/or California law, and whether Defendant's actions are unfair business practices.

31. Plaintiff's claims are typical of those of the Class because all members of the Class are similarly affected by Defendant's wrongful that is complained of herein.

32. A declaration of the Class's rights, a judgment and monetary award in the Class's favor and an injunction would address the issue on a class-wide basis.

33. Plaintiff has retained counsel experienced in the prosecution of class action and intellectual property cases, and will adequately represent the class. Plaintiff's interests do not conflict with the interests of any other member of the Class, in that all Class members have been subject to the same unlawful conduct.

34. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **FIRST CLAIM FOR RELIEF**

### **(Removal and/or Alteration of Copyright Management Information)**

35. Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 34, inclusive.

36. Section 1202(b) of the DMCA prohibits removal or alteration of copyright management information ("CMI"). CMI includes "[t]he name of, and other identifying information about, the author of a work," as well as "links to such information." 17 U.S.C. § 1202(c).

37. Plaintiff's and Class members' Instagram posts featured CMI. Instagram posts typically show a photograph on the left side of the screen and a sidebar text on the right side. The sidebar features identifying information regarding the author of the photograph, including his or her name and/or link(s) to personal website(s) or other social media sites, such as a personal YouTube channel.

38. In copying and republishing the Infringed Images on its own website, Defendant omitted the Instagram sidebar. In doing so, Defendant removed and/or altered CMI associated with the infringed images, which constitutes a violation of the DMCA.

39. Plaintiff and the Class seek the greater of (1) their actual damages and disgorgement of Defendant's profits, or (2) statutory damages for each instance of CMI removal and/or alteration.

## SECOND CLAIM FOR RELIEF

## (Copyright Infringement)

40. Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 39, inclusive.

41. Plaintiff and members of the Subclass post copyrightable photographs that they create and own to Instagram and other social media platforms.

42. Plaintiff and members of the Subclass either hold a copyright registration certificate from the United States Copyright Office or have applied for a registration certificate.

43. Through their conduct alleged herein, Defendant has infringed Plaintiff's and the Subclass members' copyright in their photographs in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

44. Defendant's acts of infringement were willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's and Subclass members' rights.

45. As a direct and proximate result of said infringement by Defendant, Plaintiff and the Subclass are entitled to damages in an amount to be proven at trial, as well as Defendants' profits attributable to the infringement.  Alternatively, Defendant is liable for statutory damages of up to $150,000 for each infringed image.

46. Plaintiff further is entitled to her attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

47. As a direct and proximate result of the foregoing acts and conduct, Plaintiff and members of the Subclass have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believes and on that basis alleges that unless enjoined by this Court, Defendant may continue to infringe Plaintiff's and members of the Subclass' rights in the Infringed Images. Plaintiff and members of the Subclass are entitled to preliminary and permanent injunctive relief to enjoin Defendant's infringing conduct.

## THIRD CLAIM FOR RELIEF

**(Infringement of the Right of Publicity)**

48. Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 47, inclusive.

49. California Civil Code Section 3344 prohibits unauthorized use of "another's name, . . . photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services. . . ."

50. The Infringed Images are photographs featuring the likeness of Plaintiff and of the members of the Class. The headers for the Instagram posts at issue also commonly featured the Influencers' name and/or other identifying information.

51. Defendant infringed the rights of publicity owned and controlled by Plaintiff and the Class by using the Class's names and/or Instagram handles and likenesses to advertise PopSugar and ShopStyle links, for commercial gain without authorization. Specifically, Defendant utilized the Class members' names and likenesses to increase affiliate revenue from the shopping platform ShopStyle and/or to conduct consumer research.

52. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have been damaged by lost income in an amount to be determined at trial. Alternatively, Plaintiff and the Class are entitled to statutory damages of up to $750 for each infringement of the right of publicity.

53. Unless enjoined, Defendant will continue its unfair conduct.

## FOURTH CLAIM FOR RELIEF

**(Intentional Interference with Contractual Relations)**

54. Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 53, inclusive.

55. Plaintiff and members of the Class are parties to a standardized contract with LIKEtoKNOW.it, titled "Influencer End User License Agreement and Terms of Service Agreement." Pursuant to the contract, Class members were entitled to a portion of the revenue that LIKEtoKNOW.it received from sales resulting from social media users' use of the app in connection with Class members' social media posts.

56. Defendant had knowledge of the existence of the contract between Class members and LIKEtoKNOW.it. Defendant further had general knowledge of the common industry practice of affiliate marketing through companies such as LIKEtoKNOW.it.

57. Defendant intentionally removed the LIKEtoKNOW.it links from Class members' Instagram pages as part of its unauthorized reposting of the Infringed Images to its own website. These actions prevented the performance of the parties' contract or made performance of that contract more expensive or difficult.

58. Defendant's actions were intentional in that Defendant intended to disrupt the performance of the parties' contract and/or knew that disruption of performance was certain or substantially certain to occur.

59. Defendant's actions damaged Class members by depriving them of revenue due under their contract with LIKEtoKNOW.it, and that they would have received but for Defendant's actions.

## FIFTH CLAIM FOR RELIEF

**(Violation of the Lanham Act)**

60. Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 59, inclusive.

61. Section 43(a) of the Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . ., which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or

promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a).

62. Defendant has in commerce made a false or misleading representation of fact in connection with goods or services that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services.

63. In reposting the Infringed Images on its own website without authorization, Defendant included Plaintiff's and Class Members' names and profile pictures that the header of their personal Instagram pages.[2] Plaintiff and members of the Class have not authorized Defendant to use their names in connection with Defendant's business, including its marketing activities.

64. Defendant's use of Plaintiff's and Class members' name falsely implies that Plaintiff and class members sponsor, endorse, or are affiliated with Defendant's goods and services and is likely to cause consumer confusion, and therefore constitutes false advertising and unfair competition.

65. Defendants' acts have been willful, knowing, deliberate, and intended to benefit Defendant at Plaintiff's and Class members' direct expense.

66. As a direct and proximate result of Defendant's unlawful acts, Plaintiff and Class members have been, and continue to be, damaged. Plaintiff and Class members have suffered economic and reputational injury flowing directly from Defendant's unlawful acts, including reputational injury resulting from false endorsement of Defendants' services and products which deprived Plaintiff and Class members' of their valuable right to select what endorsements to grant and/or with what businesses to be associated, including how those endorsements and/or associations are presented to and perceived by the public.

67. Plaintiff and the Class are entitled to recover from Defendant compensatory damages, Defendant's profits resulting from its unlawful conduct, treble damages, and reasonable attorney fees and costs in such amounts to be determined at trial.

---

[2] Defendant did not reproduce the CMI in the sidebar, as the First Cause of Action alleges.

68. Furthermore, Plaintiff and the Class have no adequate remedy at law to compensate them fully for the injury caused by Defendants' unlawful acts and which would be caused by any further infringement of Plaintiffs rights. Accordingly, the Court should enjoin Defendants from committing future unlawful acts and infringements as alleged here.

## SIXTH CLAIM FOR RELIEF

**(California Business & Professions Code §§ 17200 et seq.)**

69. Plaintiff incorporates herein by this reference each and every averment contained in paragraphs 1 through 68, inclusive.

70. Because Defendant interfered with Plaintiff's and Class members' ability to profit from their contractual arrangement with LIKEtoKNOW.it, Plaintiff and Class members have lost money or property, and have suffered injury in fact.

71. Defendant's conduct is unfair and unlawful because it (1) deprives the Class of their share of revenue from LIKEtoKNOW.it's sales due to Defendant's diversion of traffic to its own ShopStyle shopping platform, (2) violates numerous state and federal statutes as set forth herein, and (3) misappropriates the hard work of Influencers.

72. Unless enjoined, Defendant will continue its unlawful and unfair conduct.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the Class, prays for judgment against Defendant as follows:

A. Certifying the Class and the Subclass;

B. Awarding Plaintiff and the Class actual damages, Defendant's profits attributable to the infringement, or statutory damages in the amount of up to $150,000 for each Infringed Image;

C. Issuing an injunction prohibiting Defendant, and its respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiff's and the Class members' rights in the Infringed Images, their publicity rights, and their rights under the DMCA, the Lanham Act and the UCL;

1       D.    Impounding Defendant's products and materials that infringe Plaintiff's and Subclass members' copyright, as well as any other articles that contain or embody copies of the Infringed Images.

     E.    Awarding actual damages, disgorgement of profits, or statutory damages up to $750 for each violation of the Class members' right of publicity pursuant to California Civil Code section 3344;

     F.    Awarding punitive damages on the Third and Fourth Causes of Action;

     G.    Prejudgment interest according to law;

     H.    Awarding attorneys' fees and costs; and

     I.    Granting such other and further relief as the Court deems just and proper.

DATED:  June 25, 2018

Respectfully submitted,

GLANCY PRONGAY & MURRAY LLP

By:   *s/ Jonathan M. Rotter*
Jonathan M. Rotter
Leslie F. Portnoy
Stan Karas
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

Michael N. Cohen
9025 Wilshire Blvd., Suite 301
Beverly Hills, California 90211
Telephone: (310) 288-4500
Facsimile:  (310) 246-9980
email: mcohen@cohenip.com

*Attorneys for Plaintiff Nita Batra*