JONATHAN M. ROTTER (#234137)
  *jrotter@glancylaw.com*
LESLEY F. PORTNOY (#304851)
  *lportnoy@glancylaw.com*
STAN KARAS (#222402)
  *skaras@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310 201 9150
Facsimile:   310 201 9160


MICHAEL N. COHEN - #225348
  *mcohen@cohenip.com*
COHEN IP LAW GROUP, PC
9025 Wilshire Blvd., Suite 301
Beverly Hills, CA  90211
Telephone:  310 288 4500
Facsimile:   310 246 9980

Attorneys for Plaintiff
NITA BATRA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| NITA BATRA,<br><br>          Plaintiff,<br><br>     v.<br><br>POPSUGAR INC.,<br><br>          Defendant. | Case No. 4:18-CV-03752-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:         November 8, 2018<br>Time:         2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Judge:        Hon. Haywood S. Gilliam, Jr<br><br>Date Filed:  June 25, 2018<br><br>Trial Date:  Not Yet Set |

418580.1 POPSUGARIP

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     SUMMARY OF THE COMPLAINT'S ALLEGATIONS ...................................3

III.    ARGUMENT ......................................................................................................5

        A.      Standard of Review.................................................................................5

        B.      Plaintiff Properly Alleges a Claim Under The DMCA...........................6

        C.      Plaintiff Has Sufficiently Alleged a Violation of the Lanham Act.........9

        D.      The Copyright Act Does Not Preempt Plaintiff's State Law Claims. ...................11

                1.      The Right Of Publicity Claim Is Not Preempted .......................11

                2.      The Claim for Intentional Interference With Contract Is Not
                        Preempted ..................................................................................14

                3.      The Unfair Competition Claim Is Not Preempted .....................17

        E.      Plaintiff Sufficiently Alleges a Copyright Infringement Claim.............18

IV.     CONCLUSION..................................................................................................19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 4:18-CV-03752-HSG

418580.1 POPSUGARIP

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>CASES</u>

4

*Advanced Visual Image Design, LLC v. Exist, Inc.*,
  2015 WL 12747822 (C.D. Cal. March 2, 2015) ........................................................18

5

6

*Agence France Presse v. Morel*,
  769 F. Supp. 2d 295 (S.D.N.Y. 2011)..........................................................................8

7

8

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ...........................................................................11, 14

9

10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................5

11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................5

12

13

*Bonner v. Fuji Photo Film*,
  461 F. Supp. 2d 1112 (N.D. Cal 2008) .......................................................................12

14

15

*Brackett v. Hilton Hotels Corp.*,
  619 F. Supp. 2d 810 (N.D. Cal. 2008) ........................................................................14

16

*Brian Jonestown Massacre v. Davies*,
  No. 13-CV-04005 NC, 2014 WL 4076549 (N.D. Cal. Aug. 18, 2014)......................19

17

18

*Butler v. Target Corp.*,
  323 F.Supp.2d 1052 (C.D Cal. 2004) .........................................................................17

19

20

*Cable v. Agence France Presse*,
  728 F. Supp. 2d 977 (N.D.Ill. 2010) ............................................................................8

21

22

*Cisco Systems, Inc. v. STMicroelectronics, Inc.*,
  2015 WL 3488923 (N.D. Cal. June 2, 2015) ..............................................................16

23

*Cook v. Brewer*,
  637 F.3d 1002 (9th Cir. 2011) .....................................................................................6

24

25

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp*,
  606 F. 3d 612 (9th Cir. 2010) .....................................................................................18

26

27

*Crowley v. Bannister*,
  734 F.3d 967 (9th Cir. 2013) .......................................................................................6

28

418580.1 POPSUGARIP

*Dastar v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) .................................................................................................9

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) ..........................................................18, 19

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ...............................................................................12

*Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*,
   856 F.3d 1338 (11th Cir. 2017) ............................................................................18

*Freecycle Network, Inc. v. Oey*,
   505 F.3d 898 (9th Cir. 2007) .................................................................................9

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
   723 F.2d 195 (2d Cir. 1983) .................................................................................15

*In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*,
   882 F.Supp. 915  (C.D. Cal. 1994) ......................................................................11

*Innospan Corp. v. Intuit, Inc.*,
   No. C 10-04422, 2011 WL 856265 (N.D. Cal. Mar. 9, 2011) ............................18

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
   617 F.3d 1146 (9th Cir. 2010) .......................................................................13, 14

*KNB Enterprises v. Matthews*,
   78 Cal. App. 4th 362 (2000) ................................................................................13

*Laws v. Sony Music*,
   448 F.3d 1134 (9th Cir. 1996) .............................................................................14

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ...............................................................................6

*Maloney v. T3 Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) .............................................................................13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ...............................................................................5

*Matrix, Inc. v. Love Tree Fashion, Inc.*,
   2013 WL 4763869 (C.D. Cal. Sept. 4, 2013) .....................................................18

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ...............................................................................11

iii

418580.1 POPSUGARIP

*Muirbrook v. Sketchers USA Inc.*,
    2012 WL 5456402 (C.D. Cal. Nov. 6, 2012)................................................................13

*Murphy v. Millennium Radio Group, LLC*,
    650 F.3d 295 (3rd Cir. 2011) ........................................................................................8

*Quadratec, Inc. v. Turn 5, Inc.*,
    No. 13-cv-6384, 2015 WL 4876314) (E.D. Pa. Aug. 13, 2015)..................................10

*Rose v. Bank of America, N.A.*,
    57 Cal.4th 390 (2013) ..................................................................................................17

*SCEcorp v. Super. Ct.*,
    3 Cal. App. 4th 673 (1992) ..........................................................................................16

*Silicon Image v. Analogix Semiconductor, Inc*,
    2007 WL 1455903 (N.D. Cal. May 16, 2007)..............................................................17

*Stevens v. CoreLogic*,
    899 F.3d 666 (9th Cir. 2018) .........................................................................................7

*Sturdza v. United Arab Emirates*,
    281 F.3d 1287 (D.C. Cir. 2002) ...................................................................................14

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*,
    7 F.3d 1434 (9th Cir. 1993) .........................................................................................14

*Swingless Golf Club Corp. v. Taylor*,
    2009 WL 2031768 (N.D. Cal. July 7, 2009).................................................................16

*Telecom Technical Services Inc. v. Rolm Co.*,
    388 F.3d 820 (11th Cir. 2004) .....................................................................................14

*Timed Out LLC v. Youabian Inc.*,
    229 Cal.App.4th 1001 (2014) .......................................................................................13

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) ........................................................................................13

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) ..........................................................................................5

STATUTES

15 U.S.C. 1125(a)(1)..........................................................................................................9

15 U.S.C. § 1125(a)............................................................................................................9

iv

418580.1 POPSUGARIP

17 U.S.C. § 301(b)(3) ................................................................................................................11

17 U.S.C. § 1202(b) ...................................................................................................................6

17 U.S.C. § 1202(c) .................................................................................................................4, 6

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 4:18-CV-03752-HSG

418580.1 POPSUGARIP

## I.     INTRODUCTION

In mid-April 2018, Defendant PopSugar, Inc., the owner of a popular Millennial-oriented fashion and lifestyle website and app, faced widespread outrage.  It came to light that PopSugar had, without consent, copied a vast number of Instagram images of well-known lifestyle leaders (the "Influencers"), and used the Influencers' names and likenesses, to draw users to its platform.  The Influencers in the class monetize their social media posts, which generally feature their likeness, by making them "shoppable."  This means that if a follower likes a particular clothing item or accessory featured in an image, he or she may purchase it through affiliate program LIKEtoKNOW.it, with the Influencer receiving a portion of the revenue.  In pirating the Influencers' social media posts, PopSugar intentionally stripped out the LIKEtoKNOW.it links, replacing them with links to rival affiliate platform ShopStyle, which PopSugar previously owned.  Facing a storm of public condemnation from the Influencers, ShopStyle (which terminated its relationship with PopSugar in the wake of the scandal), and others in the industry, PopSugar's CEO issued an unconditional apology for his company's misconduct: "I sincerely apologize for all the pain this may have caused and I feel terrible about how this made people feel."  Complaint, ¶23.

Despite PopSugar's acknowledgment of guilt and its as yet unfulfilled promise to repay Influencers for the misappropriated affiliate revenue, the company now seeks to avoid liability for its conduct.  None of the arguments in PopSugar's motion to dismiss have merit.  Some misconstrue Plaintiff's allegations, while others are contrary to controlling authority.

First, PopSugar claims that its removal of Copyright Management Information does not violate the Digital Millennium Copyright Act ("DMCA") because the company did not intend to encourage someone else's piracy.  The reach of the DMCA, however, is not that narrow, and here PopSugar's removal of CMI facilitated *its own* piracy.  Plaintiff has alleged in detail that PopSugar intentionally removed links to identifying information in reposting her images.  That, as

other courts have held, is sufficient to state a claim under the DMCA.

Second, PopSugar argues that the Lanham Act applies only to goods.  But on its face, the statute also applies to services.  That includes shopping platforms, such as the ones involved in this case.  And PopSugar's fallback argument that Plaintiff has not satisfied Rule 9 ignores the Complaint's detailed allegations.

Third, PopSugar contends that the Copyright Act preempts Plaintiff's state law claims. This argument overlooks that each of these claims alleges the requisite "extra element" that defeats preemption.  For instance, the intentional interference with contract claim alleges not only that PopSugar published Plaintiff's images without permission, but also that it replaced the LIKEtoKNOW.it links with those for ShopStyle, which disrupted the relationship between the contractual parties (*i.e.*, Plaintiff lost her commissions, while LIKEtoKNOW.it lost sales).  In turn, the right of publicity claim is not based solely on PopSugar's display of the images, but rather on PopSugar's false suggestion that Plaintiff endorses or is affiliated with PopSugar and/or ShopStyle.  The unfair competition cause of action is derivative of the state law claims, as well as the federal claims under the DMCA and the Lanham Act.

Finally, PopSugar asserts that Plaintiff is required to allege that she is already in possession of a copyright registration for the images that defendant copied without authorization. Binding Ninth Circuit authority establishes that no such requirement exists, and that Plaintiff may allege *either* ownership of a registration or *a submission* of a registration application to the Copyright Office.

In sum, Plaintiff respectfully requests that the Court deny the motion in its entirety and permit this action to proceed to swift resolution in favor of Plaintiff and the putative class members.

418580.1 POPSUGARIP

## II.    SUMMARY OF THE COMPLAINT'S ALLEGATIONS

Retailers, particularly those in the fashion and lifestyle industry, increasingly rely on social media to promote and sell their products. ¶ 1.[1] Plaintiff Nita Batra, like the other members of the class she seeks to represent, is a social media influencer who works with shopping platform affiliate network LIKEtoKNOW.it to allow her followers to purchase fashion items featured in her social media posts. ¶ 1. LIKEtoKNOW.it has a contract with Batra, and pays Batra a commission when her followers purchase items through her posts.  ¶¶ 1, 55.

The arrangement works as follows: Batra maintains an active Instagram account, @nextwithnita, focused on fashion and lifestyle, with more than 214,000 followers.  ¶¶ 12, 13. Batra's Instagram posts generally feature LIKEtoKNOW.it links.  ¶ 13. If one of Batra's followers, or another Instagram user, is interested in purchasing clothing and/or accessories featured in Batra's Instagram feed, he or she may either add that image to the user's LIKEtoKNOW.it app, which then links to the retailer's webpage for the product, or follow a link to one of Batra's LIKEtoKNOW.it webpages, which also provides links to purchase the product. ¶ 13. When a user purchases a product through one of those methods, the retailer pays LIKEtoKNOW.it, which in turn pays Batra a commission.  ¶ 13. This arrangement is governed by a standardized contract between Batra and LIKEtoKNOW.it.  ¶ 13.

PopSugar, on the other hand, never had a contract with Batra.  ¶ 2. But PopSugar saw that Batra and other putative class members had successfully developed a social media following, and decided, without their consent or authorization of any kind, to capitalize on their personas by using their name, likeness, Instagram feed, and LIKEtoKNOW.it links, to make it seem like they were endorsing PopSugar and that they were advertising products through PopSugar.  ¶¶ 2, 14. PopSugar had an ongoing commercial relationship with a LIKEtoKNOW.it competitor called

---

[1] All "¶" references are to the Complaint in this action, unless otherwise noted.

418580.1 POPSUGARIP

ShopStyle, which PopSugar had previously owned.   ¶¶ 14, 21.  PopSugar used Batra and the putative class members to try to sell products through ShopStyle and to draw traffic to PopSugar's website without obtaining the Influencers' permission.   ¶¶ 2.

The scheme was brazen.  PopSugar set up a webpage on its website with Batra's name and likeness at the top, grabbed the images Batra tagged with her LIKEtoKNOW.it links, stripped out those links, from which Batra derives her livelihood, replaced them with ShopStyle links that paid only PopSugar, and placed those altered posts on the unauthorized Batra page.   ¶¶ 13, 16, 17, 50. PopSugar also stripped out the accompanying information, including links to her social media websites and other personal information, which serve to promote her role as an Influencer, and which constituted copyright management information under Section 1202(b) of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(c).   ¶¶ 12, 37-38.  PopSugar did this to all members of the putative Class.   ¶ 16.

LIKEtoKNOW.it publicly confirmed that PopSugar's misappropriation was done without its knowledge or consent.   ¶ 20.  Even ShopStyle, the affiliate network PopSugar used for its misappropriation, immediately condemned PopSugar when its actions came to light, calling its actions "unacceptable" and "a misuse of influencers' content."   ¶ 21.  The misappropriation was so egregious that ShopStyle, which again, was previously owned by PopSugar, announced that it was terminating its exclusive contract with PopSugar due to PopSugar's violation of the "trust and legal rights of our influencer community."   ¶ 21.

For its part, PopSugar admitted that it had (1) misappropriated the Influencers' names, likenesses, and content, and (2) swapped out the LIKEtoKNOW.it links that paid Influencers with ShopStyle links that paid PopSugar.   ¶ 22-23.  Nevertheless, PopSugar claimed that the project was intended for internal use only and was hidden from search indexing and social media.  *Id*. But, in fact, the pages were not hidden from search indexing, and were available on PopSugar's

public website.  ¶ 22.

PopSugar used Batra and the Class's names and likenesses to advertise PopSugar and attract traffic to itself, to generate affiliate revenue through ShopStyle, and to conduct market research.  ¶¶ 18, 51.  By featuring the Influencers' content, and by setting up subpages for each Class member making it appear that each was affiliated with or had some business association with PopSugar, PopSugar falsely implied that Plaintiff and the class endorsed or were affiliated with PopSugar in general and with its ShopStyle affiliate program efforts in particular.  ¶ 64. Additionally, by removing the authorized LIKEtoKNOW.it links and replacing them with unauthorized ShopStyle links, PopSugar prevented the receipt of benefits by Plaintiff and the Class under their contracts with LIKEtoKNOW.it.  ¶ 57.

## III.   ARGUMENT

### A.    Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of a complaint, challenging whether it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556).  "'[F]actual allegations must be enough to raise a right to relief above the speculative level.'" *Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008) (*quoting Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.

In ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*

5

1    *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Courts may dismiss a

2    claim "only if it appears beyond doubt that the plaintiff could prove no set of facts in support of

3    his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir.

4    2011) (quotation marks omitted).  Courts should grant the plaintiff leave to amend "'if it appears

5    at all possible that the plaintiff can correct the defect.'"  *Crowley v. Bannister*, 734 F.3d 967, 977

6
7    (9th Cir. 2013) (*quoting Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)).

8            **B.    Plaintiff Properly Alleges a Claim Under The DMCA**

9            PopSugar seeks to avoid liability for its admitted misconduct by interpreting the DMCA

10   in an artificially narrow manner.  The statute's plain text prohibits removal of copyright

11   management information ("CMI").  CMI includes "[t]he name of, and other identifying

12   information about, the author of a work," as well as "links to such information."  17 U.S.C. §

13   1202(c).  Here, Plaintiff alleged that PopSugar intentionally removed CMI, including links to

14   Plaintiff's authorized social media platforms.  ¶37.  Accordingly, PopSugar's conduct falls

15
16   directly within the scope of the DMCA.

17           PopSugar, however, seeks to manufacture an additional requirement: that Plaintiff allege

18   that PopSugar's misconduct was done solely for the purpose of making detection of the Images'

19   infringement more difficult.  The statute contains no such requirement.  17 U.S.C. Section

20   1202(b) forbids any person to "(1) intentionally remove or alter any copyright management

21   information," "knowing, or, with respect to civil remedies under section 1203, having reasonable

22   grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right

23   under this title."  PopSugar ignores the "enable" and "facilitate" prongs of the intent requirement,

24   as the removal of CME here was done at least to enable and facilitate PopSugar's infringement.

25
26           The Complaint alleges that PopSugar intentionally copied only images and removed the

27   accompanying CMI.  ¶38.  Copying and republishing the images while removing the CMI and

28   replacing it with links to ShopStyle was a core aspect of PopSugar's scheme, and thus, enabled

6

and facilitated its own infringement.  There is no requirement in the statute, as PopSugar seems to suggest, that there has to be a second pirate involved.  PopSugar's own CMI-removing piracy is sufficient.

PopSugar cites *Stevens v. CoreLogic*, 899 F.3d 666 (9th Cir. 2018) in support of its position.  This case is easily distinguishable.  Most important, *Stevens*, a case that turned on intent, was decided upon summary judgment, not a pleadings challenge.  Specifically, the Ninth Circuit upheld the grant of summary judgment to the defendant on the highly fact-dependent issue of intent after "[e]xtensive discovery . . . The [plaintiffs] had taken depositions of 16 CoreLogic employees, served and received responses to 42 interrogatories, and served 114 requests for production of documents."  *Id.*, at *9.  Obviously, here, Plaintiff has not taken *any* discovery. The Court should not resolve the intensely fact-specific issue of PopSugar's intent before allowing Plaintiff to perform basic discovery into the real reasons behind PopSugar's decision to remove CMI as part of its wholesale piracy.

Second, the factual allegations here stand in stark contrast to *Stevens*.  Here, Plaintiff alleges that PopSugar itself engaged in piracy.  In *Stevens*, the basic display of the photographs was lawful and in accordance with license terms, but the defendant happened to be using software that included pre-written libraries that were unable to read the metadata, and so did not reproduce it when re-sizing the photographs so they would not be too large to be displayed on its website. *Id.*, at *2.  Accordingly, the removal of CMI was not an intentional choice, but rather the regular operation of the software program that the defendant used for legitimate purposes.  *See id.*  Here, by contrast, Plaintiff alleges that PopSugar's  choice to remove CMI was a central part of its scheme to alter and republish the Influencers' content, and has not alleged that the removal of CMI was an innocent byproduct of licensed and otherwise lawful conduct.  ¶¶2, 16-18.  *Stevens* is thus inapposite.

PopSugar also argues that it cannot be liable under the DMCA because it published Plaintiff's name above the Infringed Images. But this ignores that each image contained its own CMI. PopSugar offers no authority for the proposition that the statute allows deletion of CMI to enable infringement when some identifying information is preserved elsewhere.

In fact, courts consistently find a DMCA violation where the defendant removes any CMI, including, as here, the author's name and other identifying information. Thus, for instance, in *Murphy v. Millennium Radio Group, LLC*, 650 F.3d 295 (3rd Cir. 2011), the Third Circuit held that the defendant's omission of a photographer's name that was next to the image that it reprinted violated the law. Specifically, the court noted that the statute does not apply only to "automated copyright protection or management systems," but also includes identifying information published in conjunction with the work. *Id.*, at 302-03. Thus, the court held that "a cause of action under § 1202 of the DMCA potentially lies whenever the types of information listed in § 1202(c)(1)-(8) and 'conveyed in connection with copies ... of a work ... including in digital form' is falsified or removed, regardless of the form in which that information is conveyed." *Id.*, at 305. *See also Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011) (allegation that the defendant omitted a photojournalist's identifying information, which was placed next to his photograph, in republishing that image was sufficient to state a claim); *Cable v. Agence France Presse*, 728 F. Supp. 2d 977 (N.D.Ill. 2010) (a photographer's name and link to his personal website located next to the republished image constituted CMI).

Finally, PopSugar argues that Plaintiff failed to sufficiently identify the removed CMI. But Plaintiff has alleged that PopSugar wrongfully removed her identifying links. ¶37. PopSugar does not—and cannot—cite any authority that the DMCA requires anything else. Regardless, even if the Court were grant PopSugar's motion on this basis, it should do so with leave to amend because more detailed information regarding the removed CMI can be supplied, even though

1   nothing in the DMCA supports such a heightened pleading requirement.

2         **C.**      **Plaintiff Has Sufficiently Alleged a Violation of the Lanham Act**

3         Section 43(a) of the Lanham Act imposes liability on "[a]ny person who, on or in

4   connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or

5   device, or any combination thereof, or any false designation of origin . . ., which  (A) is likely to

6   cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association

7   of such person with another person, or as to the origin, sponsorship, or approval of his or her

8   goods, services, or commercial activities by another person, or (B) in commercial advertising or

9   promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her

10   or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a).

11   

12         With respect to the Lanham Act claim, PopSugar does not contest that it used Plaintiff's

13   name and likeness in connection with affiliate sales through ShopStyle, a partner platform that is

14   not affiliated with Plaintiff's partner, LIKEtoKNOW.it.  PopSugar contends that the Lanham Act

15   "prohibits false statements about products."  MTD, 10:5.  Attempting to limit the Lanham Act to

16   products is directly contrary to its text, which applies to "any goods *or services*." 15 U.S.C.

17   1125(a)(1)(emphasis added).  Selling clothes and accessories through "shoppable" images is a

18   service and PopSugar does not contend otherwise.  Similarly, by posting "shoppable" images

19   PopSugar itself was acting as a service.  In support of its artificially narrow interpretation of the

20   Lanham Act, PopSugar quotes several cases applying the statute to products.  None of these cases

21   hold that services are somehow not covered by the Lanham Act.  Indeed, PopSugar's own

22   authority recognizes that services, such as ShopStyle's and PopSugar's, are within the Lanham

23   Act's ambit.  *See Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003); *Freecycle*

24   *Network, Inc. v. Oey*, 505 F.3d 898, 902-03 (9th Cir. 2007).

25         PopSugar argues that Plaintiff seeks to "over-extend trademark protections into the

26   copyright domain."  MTD, 10:13.  PopSugar willfully conflates Plaintiff's copyright claim (*i.e.*,

9

the copying of the Infringed Images) with her trademark claim (*i.e.*, the use of her "shoppable" images to create a false impression that she endorses either PopSugar's or ShopStyle's services). Thus, for example, publishing a copyrighted photograph of a celebrity without a license would be copyright infringement.  By contrast, plastering a celebrity's name and likeness all over one's clothing boutique without her agreement would create a false impression of endorsement, and thus a Lanham Act violation, even if the clothing boutique's owner owned the copyrights to the photographs that were posted.

PopSugar's primary authority is *Quadratec, Inc. v. Turn 5, Inc.*, No. 13-cv-6384, 2015 WL 4876314) (E.D. Pa. Aug. 13, 2015), which it claims involves "virtually identical facts."  This non-binding, out-of-circuit decision is readily distinguishable.  In *Quadratec*, the defendant used the Plaintiff's copyrighted images of various aftermarket Jeep products to promote its own aftermarket Jeep products.  *Id.* at **1-2.  Just as here, the plaintiff alleged claims under both the Copyright Act and the Lanham Act.  The court denied a motion to dismiss the copyright infringement claim, as the Court should do here as well.  With respect to the Lanham Act claim, the court granted the motion to dismiss because "it is not disputed that neither Plaintiff nor Defendant is in the business of selling catalog services.  Instead, they are in the business of selling aftermarket Jeep® products.  There can be no confusion as to the origin of these goods, because aftermarket Jeep® products—whether sold by Plaintiff or Defendant—are manufactured by the same source."  *Id.* at *9.  In stark contrast, here neither Plaintiff nor PopSugar sell the products featured in the "shoppable" images.  Rather they provide a convenient online platform to shop for fashion and accessories through affiliate platforms, LIKEtoKNOW.it and ShopStyle, respectively. Accordingly, unlike in *Quadratec*, PopSugar *is* effectively "in the business of selling catalogue services."  *Id.*  Accordingly, PopSugar's use of Plaintiff's name and likeness (as embodied in the "shoppable" images) creates a false impression that she endorses and/or is affiliated with

PopSugar and/or ShopStyle.  That is a classic Lanham Act violation.

Finally, PopSugar argues that the Complaint's Lanham Act allegations fail to comply with Rule 9.  As an initial matter, there is a split within the Ninth Circuit concerning whether Rule 8 or Rule 9 controls.  *See*, *e.g.*, *In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*, 882 F.Supp. 915 , 927 (C.D. Cal. 1994) ("a Lanham Act claim is not subject to the strict pleading requirements of Rule 9 fraud claims," although the allegations must be "sufficiently detailed."). In any case, Plaintiff amply satisfies Rule 9: "who" – PopSugar, "what" – misrepresented Plaintiff's endorsement and/or involvement with PopSugar and/or ShopStyle, "when" – in or about Summer 2017 through April 2018, "where" – upon information and belief, within this judicial district, the location of PopSugar's principal place of business, and "how" – by copying Plaintiff's shoppable images, posting them on PopSugar's website, stripping out hyperlinks to LIKEtoKNOW.it, and replacing them with links to its own affiliate shopping platform, ShopStyle.  *See*, *e.g.*, ¶¶2, 16-19.  This fully satisfies Rule 9.

### D.   The Copyright Act Does Not Preempt Plaintiff's State Law Claims.

The Copyright Act "does not preempt state law remedies with respect to 'activities violating legal or equitable rights that are not equivalent to any of the exclusive rights [of copyright].'"  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010) (quoting 17 U.S.C. § 301(b)(3)).  Specifically, a state-law claim is not preempted if it "includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act."  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). Here, each of Plaintiff's state law claims alleges the requisite "extra element," thus defeating PopSugar's copyright preemption argument.

### 1.   The Right Of Publicity Claim Is Not Preempted

PopSugar argues that Plaintiff's right-of-publicity claim is preempted by the Copyright Act because the unauthorized use of her name and likeness appears in a copyrightable

11

photograph.  This argument fails under *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) and its progeny.  In *Downing*, the defendant clothing company obtained a copyright license of a photograph of the plaintiffs, well-known surfers, and used it in an advertising brochure.  The plaintiffs asserted a right of publicity claim.  *Id*. at 1000.  The Ninth Circuit rejected the clothing company's argument that the claim was preempted by the Copyright Act, holding "it is not the publication of the photograph itself . . . that is the basis for [the plaintiffs'] claims, but rather, it is the use of the [plaintiffs'] likenesses and their names pictured in the published photograph."  *Id*. at 1003.  The court emphasized that claims for misappropriation of a person's "name or likeness" are not preempted by the Copyright Act, "notwithstanding the fact that [such] names or likenesses are embodied in a copyrightable photograph."  *Id*. at 1004.  The court concluded: "[b]ecause the subject matter of the Appellants' statutory and common law right of publicity claims is their names and likenesses, which are not copyrightable, the claims are not equivalent to the exclusive rights contained in § 106 [of the Copyright Act]."  *Id*.

Similarly, in *Bonner v. Fuji Photo Film*, 461 F. Supp. 2d 1112 (N.D. Cal 2008), the defendant placed a picture of the plaintiff on its camera packaging.  The plaintiff sued the photographer who originally took the photograph and owned the copyright for violation of her right of publicity.  The photographer moved to dismiss on the grounds of preemption.  The court rejected the photographer's argument, holding "leading copyright treatises are in accord on the notion that the use of a person's likeness is not covered by copyright law, even though the likeness may be captured in a copyrightable photograph . . . Plaintiff is not advancing a claim for the misappropriation of the photograph itself, but rather for the misappropriation of her likeness, as it has been captured in the photograph."  *Id*. at 1121 (citing Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][c], at 1-28 (2006)).

Indeed, courts consistently reject efforts by defendants to apply copyright preemption to

cases of use of people's likeness for commercial purposes, particularly advertising use.  Just recently, the Ninth Circuit reiterated: "*we conclude that a publicity-right claim is not preempted when it targets non-consensual use of one's name or likeness on merchandise or in advertising.*"  *Maloney v. T3 Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017) (affirming dismissal of a right of publicity claim where, *unlike here*, the plaintiffs' likeness was not used for advertising purposes) (emphasis added).  *See also KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 365 (2000) (holding that federal copyright laws did not preempt California right of publicity claims by models in a photograph "because a human likeness is not copyrightable, even if captured in a copyrighted photograph."); *Muirbrook v. Sketchers USA Inc.*, 2012 WL 5456402 at *3 (C.D. Cal. Nov. 6, 2012) ("The fact that [p]laintiff's right of publicity has allegedly been misappropriated via publication of a copyrighted work does not transmute this action into an issue over the ownership or infringement of a copyrighted work."); *Timed Out LLC v. Youabian Inc.*, 229 Cal.App.4th 1001, 1013 (2014) ("[I]t is not the publication of the photographs themselves that is the basis for Plaintiff's claims.  Rather, it is Defendants' use of the Models' likenesses pictured in the photographs to promote Defendants' business that constitutes the alleged misappropriation.") (citing 1 Nimmer on Copyright, § 1.01 [B][1][c] (2013)); *cf. Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) ("The basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question.").

None of PopSugar's authorities support a contrary rule.  In *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146 (9th Cir. 2010), the Ninth Circuit held that the plaintiff's right of publicity claim was embodied entirely in the copyrightable films that the defendant purportedly distributed without a license.  Notably, the plaintiff's likeness did *not* appear on the DVDs' covers, which precluded any claim that it was being used for advertising purposes, unlike

here.  *See id.*, at 1153-54.  And more fundamentally, the only thing being sold in *Jules Jordan* was the copyrighted work.  Here the complaint does not allege that PopSugar sold the photographs, but rather, that they used them to advertise products and to draw users to PopSugar.

Similarly, in *Laws v. Sony Music*, 448 F.3d 1134 (9th Cir. 1996), the plaintiff singer argued that unauthorized use of her voice on another artist's song violated her right of publicity.  But, as the Ninth Circuit concluded in rejecting her claim, the entirety of the alleged violation consisted of the use of the singer's copyrightable recording.  In contrast, by associating Plaintiff with its partner ShopStyle – indeed, by using her image and likeness to embed "shoppable" hyperlinks to that company's website – PopSugar monetized Plaintiff's likeness to promote ShopStyle without her permission or even knowledge.  That is precisely the type of advertising use that *Downing* and a legion of other cases prohibit and hold to be not preempted by copyright.

### 2.    The Claim for Intentional Interference With Contract Is Not Preempted

"In cases in which a third-party contractual relationship is alleged to have been disrupted by a defendant's infringement of a copyright, '[m]ost courts have held that the Copyright Act does not preempt the enforcement of contractual rights.'"  *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 822 (N.D. Cal. 2008) (quoting *Altera Corp v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005)).  Even if a claim could not exist without an alleged copyright infringement, such a claim is not automatically preempted.  *Id.*  Rather, the "Ninth Circuit has made clear that where a state law claim adds an additional element, it is not preempted by Section 301."  *Id.  See also Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1442 (9th Cir. 1993) ("Summit has stated a claim for intentional interference with contract. Such a claim includes the requisite extra element and therefore is not preempted by federal law"); *Telecom Technical Services Inc. v. Rolm Co.*, 388 F.3d 820, 833 (11th Cir. 2004) (state law tortious interference with contract claim not preempted); *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1305 (D.C. Cir.

418580.1 POPSUGARIP

2002) (interference claim not preempted).

PopSugar repeats the canard that it did nothing more than repost the Infringed Images to its own website.  In fact, far beyond merely reproducing the Infringed Images, PopSugar actively stripped out shoppable hyperlinks to LIKEtoKNOW.it and replaced them with links to its affiliate ShopStyle (with the commissions flowing to itself, not Plaintiff).  In other words, the gravamen of Plaintiff's intentional interference claim is not the copying and publication of her photographs.[2] Rather, it is that PopSugar interfered with Plaintiff's affiliate agreement with LIKEtoKNOW.it by removing the links to that platform, thereby depriving Plaintiff of the benefits of her affiliate arrangement.  This alone distinguishes this case from those that PopSugar cites, which involve mere copying of copyrightable material and not the additional element of willfully depriving the plaintiff of the benefit of an additional contractual arrangement, in order to obtain revenue from a third party affiliate.[3]

PopSugar also argues that, aside from the preemption issue, Plaintiff has not pled a viable claim of interference with contract.  The elements of a cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).

---

[2] For this reason, PopSugar's argument that "[Plaintiff] never explains how PopSugar leveraged her names [sic] and likeness to sell products independent of POPSUGAR's alleged use of Plaintiff's photos" (MTD at 16:6-8) is baseless – the commercial use was replacing the imbedded links and making it appear that Plaintiff endorses ShopStyle.

[3] PopSugar relies heavily on *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195 (2d Cir. 1983).  In that case, the defendant mere published brief portions of the former President's memoirs.  The situation here is more akin to Barnes & Noble copying the contents of Amazon's online books department, and replacing all hyperlinks to Amazon's sales processing pages to its own website.  This is a far cry from *Harper & Row*.

Here, PopSugar ignores the plain allegations of the Complaint in arguing that Plaintiff has not stated an interference claim.  For instance, PopSugar claims that it did not interfere with the contract between Plaintiff and LIKEtoKNOW.it.  MTD, 20:1-9.  But Plaintiff alleges that PopSugar's reposting of her "shoppable" images to its own website and its stripping out of the LIKEtoKNOW.it affiliate links to be replaced with those of ShopStyle (1) improperly redirected traffic from Plaintiff's Instagram page to PopSugar, and (2) deprived her of affiliate revenue from LIKEtoKNOW.it (which in turn means that LIKEtoKNOW.it was deprived of the revenue sales that would have resulted from Plaintiff's Instagram page, but for PopSugar's actions).  In other words, PopSugar's actions disrupted the flow of customers to LIKEtoKNOW.it that would have clicked through Plaintiff's Instagram page, while also depriving Plaintiff of the revenue that she would have received through the resulting LIKEtoKNOW.it sales.  This is a classic and straightforward case of interference with contract.[4]

Finally, Defendant claims, without citing any authority,[5] that Plaintiff is required to attach her contract with LIKEtoKNOW.it to her Complaint to survive a motion to dismiss.  MTD, 19:7-11.  No such requirement exists.  *Cisco Systems, Inc. v. STMicroelectronics, Inc*., 2015 WL 3488923, at *6 (N.D. Cal. June 2, 2015) (noting that courts have not required detailed allegations of each specific term and parties involved in a contact); *Swingless Golf Club Corp. v. Taylor*, 2009 WL 2031768, at *4 (N.D. Cal. July 7, 2009) (a general invocation of a contractual relationship between parties is sufficient to state an interference claim.).  Even so, the Complaint repeatedly describes Plaintiff's contractual relationship with LIKEtoKNOW.it.  ¶13.  Alleging or even implying the existence of a contract will prevent dismissal under the Rule 12(b)(6) standard.

---

[4] PopSugar does not and cannot claim that its conduct was not intentional.  Replacing LIKEtoKNOW.it's affiliate links with those from ShopStyle is not something that could be done by accident.

[5] *SCEcorp v. Super. Ct*., 3 Cal. App. 4th 673, 677 (1992) merely notes that a court may examine a contract if it is attached to a complaint, not that the plaintiff is *required* to attach it.

*Cisco Systems*, 2015 WL 863267, at *6.

In any event, Plaintiff's contract with LIKEtoKNOW.it is a standardized affiliate agreement, substantially similar if not identical to those of other putative class members'.  If the Court agrees with PopSugar's argument, Plaintiff respectfully requests leave to ament to attach that contract.

### 3.     The Unfair Competition Claim Is Not Preempted

By proscribing "any unlawful" business practice, "[the UCL] 'borrows' violations of other laws and treats them as unlawful practices" that the [UCL] makes independently actionable.'" *Rose v. Bank of America, N.A.*, 57 Cal.4th 390, 396 (2013) (citations omitted).  Well-pled allegations of intentional interference support a UCL claim under the statute's "unlawful" prong. *Silicon Image v. Analogix Semiconductor, Inc*, 2007 WL 1455903, at *3 (N.D. Cal. May 16, 2007) ("… so long as the underlying claim for interference with contractual relations is adequately pleaded, so is the UCL claim to the extent it is based on the tortious interference claim.").  In fact, a UCL claim that "is based on tortious interference with contract," "is not preempted by the Copyright Act."  *Id*., at *9.  As explained in the previous section, the Complaint sufficiently pleads that PopSugar wrongfully interfered with the contract between Plaintiff and PopSugar.  Moreover, Plaintiff has sufficiently alleged a right of publicity claim.  Accordingly, Plaintiff has also alleged a viable UCL claim.

Further, misuse of copyrightable material for the purposes of advertising is also not preempted and is actionable under the UCL.  For instance, in *Butler v. Target Corp*., 323 F.Supp.2d 1052, 1057-58 (C.D Cal. 2004), the court denied motion to dismiss unfair competition claim on preemption grounds where the defendant used the plaintiff's copyrightable lyrics in a way that suggested an advertising endorsement.  Here, PopSugar used Plaintiff's name and likeness to promote itself and the use of its affiliate platform ShopStyle.  That is an independent basis for a UCL claim.

17

1

**E.      Plaintiff Sufficiently Alleges a Copyright Infringement Claim**

2

Defendant argues that the Court should dismiss Plaintiff's copyright infringement claim

3

because she does not allege that she possesses a copyright registration certificate for the infringed

4

images.  Defendant brazenly misstates the applicable law.  Although some courts elsewhere have

5

held that actual possession of a copyright registration is required,[6] that is not the current rule

6

within the Ninth Circuit.  In the Ninth Circuit, "receipt by the Copyright Office of a complete

7

application satisfies the registration requirement of § 411(a)."  *Cosmetic Ideas, Inc. v.*

8

*IAC/Interactivecorp*, 606 F. 3d 612, 621 (9th Cir. 2010).  Courts throughout this Circuit apply this

9

rule consistently.  *Advanced Visual Image Design, LLC v. Exist, Inc.*, 2015 WL 12747822, *2

10

(C.D. Cal. March 2, 2015) (denying motion to dismiss a copyright infringement claim where the

11

plaintiff alleged in the alternative possession of a copyright certificate or application to the

12

Copyright Office.); *Matrix, Inc. v. Love Tree Fashion, Inc*., 2013 WL 4763869, *2 (C.D. Cal.

13

Sept. 4, 2013) (denying motion to dismiss; "Failing to include the registration number in the

14

complaint . . . cannot logically bar a copyright-infringement suit that can be brought before a

15

registration number is ever assigned.");  *Innospan Corp. v. Intuit, Inc*., No. C 10-04422, 2011 WL

16

856265, *9 (N.D. Cal. Mar. 9, 2011) (claim sufficient where the plaintiff alleged that it

17

"completed an application to register its subject matter with the copyright office").

18

Here, as in *Advanced Visual Image Design*, Plaintiff alleged in the alternative that she has

19

applied for a copyright registration for the Infringed Images.  ¶42.  Settled authority holds that

20

this allegation is sufficient to state a claim for copyright infringement.[7]

21

PopSugar's sparse authority does not support its argument.  For example, *DocMagic, Inc.*

22

*v. Ellie Mae, Inc*., 745 F. Supp. 2d 1119, 1143 (N.D. Cal. 2010) is plainly inconsistent with

23

24

25

26

_____

27

[6] *See, e.g, Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*, 856 F.3d 1338
(11th Cir. 2017), *cert. granted* 138 S.Ct. 2707 (2018).

28

[7] Notably, Defendant does not – and cannot – contest that it copied the Infringed Images without
Plaintiff's authorization.

*Cosmetic Ideas*.  In fact, in that case the court cited the controlling language from *Cosmetic Ideas* immediately before concluding, directly contrary to that case, that submission of a copyright registration is not enough, and that actual ownership of a copyright registration is requirement.  *Id*. ("a party may bring a suit for copyright infringement once the Copyright Office receives a complete application for copyright on the allegedly infringed materials.") (citation omitted).  The Court should follow the Ninth Circuit's clear mandate rather than this non-binding decision.  Finally, PopSugar's reliance on *Brian Jonestown Massacre v. Davies*, No. 13-CV-04005 NC, 2014 WL 4076549, at *6 (N.D. Cal. Aug. 18, 2014) is unavailing.  In that case, the plaintiff *admitted* that he never registered a copyright in the allegedly infringed songs.  Here, by contrast, Plaintiff alleged, in the alternative, that she has either registered or in the process of registering the Infringed Images with the Copyright Office.  *Cosmetic Ideas* requires nothing more.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion in its entirety.  In the alternative, Plaintiff respectfully requests leave to amend.

Dated:  September 14, 2018                                    GLANCY PRONGAY & MURRAY LLP


                                                 By:   */s/ Stan Karas*
                                                       Jonathan M. Rotter
                                                       Lesley F. Portnoy
                                                       Stan Karas

                                                       COHEN IP LAW GROUP, PC
                                                       Michael N. Cohen

                                                       Attorneys for Plaintiff Nita Batra

418580.1 POPSUGARIP

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On September 14, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 14, 2018, at Los Angeles, California.


*s/ Stan Karas*
Stan Karas

# Mailing Information for a Case 4:18-cv-03752-HSG Batra v. PopSugar, Inc.

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael N. Cohen**
  mcohen@cohenip.com,info@patentlaw.com

- **Bevan Augusta Dowd**
  bdowd@keker.com,gpeterson@keker.com,bevan-dowd-4288@ecf.pacerpro.com

- **Benedict Y Hur**
  bhur@keker.com,gpeterson@keker.com,efiling@keker.com,ben-hur-1001@ecf.pacerpro.com,trevor-white-1561@ecf.pacerpro.com

- **Stan Karas**
  SKaras@glancylaw.com,stan-karas-1195@ecf.pacerpro.com

- **Lesley F Portnoy**
  lportnoy@glancylaw.com

- **Jonathan Moshe Rotter**
  jrotter@glancylaw.com,info@glancylaw.com,jonathan-rotter-5262@ecf.pacerpro.com

- **Michael Lawrence Schrag**
  mls@classlawgroup.com,5294218420@filings.docketbird.com,sal@classlawgroup.com,ecf@classlawgroup.com

- **Travis S Silva**
  tsilva@keker.com,travis-silva-0927@ecf.pacerpro.com,sandy-giminez-6735@ecf.pacerpro.com,efiling@keker.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)